**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

LEAANN MCDONALD,

        Plaintiff,

v.                                Case No. 6:19-cv-642-Orl-JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

        Defendant.

## OPINION AND ORDER[2]

### I. Status

LeaAnn McDonald[3] ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's inability to work was initially alleged to be the result of "4 strokes," a "pace maker," "2 heart attacks," "seizures," and unspecified issues with her "heart beat." Tr. at 66, 83, 102, 285. Later in the administrative process, Plaintiff amended her alleged inability to work to be the result of "5 strokes," a "pace maker," "afib," "seizures," "heat rate low," "parafusion," "parocoditis

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed June 5, 2019; Reference Order (Doc. No. 18), signed June 10, 2019 and docketed June 13, 2019.

[3] Ms. McDonald was formerly known as LeaAnn Buckman, and the Buckman name appears in various places in the Transcript of Administrative Proceedings (Doc. No. 16; "Tr." or "administrative transcript"), filed June 5, 2019.

[sic]," and "aneurism in the right heart." Tr at 1013; see Tr. at 1157. Plaintiff filed applications for DIB and SSI on January 17, 2012, alleging in both applications a disability onset date of January 9, 2010.[4] Tr. at 249-50 (DIB), 251-56 (SSI). The applications were denied initially, Tr. at 66-82, 100, 148, 149-53 (DIB), 83-99, 101, 154-59, 160 (SSI), and upon reconsideration, Tr. at 102-17, 134, 136, 162, 163-67 (DIB), 118-33, 135, 137, 168, 169-73 (SSI).

On April 2, 2014, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 34-65, 1041-72 (duplicate). The ALJ issued a decision on December 15, 2014, finding Plaintiff not disabled through the date of the decision. Tr. at 13-26, 983-96 (duplicate). Thereafter, Plaintiff requested review of the decision by the Appeals Council. Tr. at 6. On May 13, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, 1004-06 (duplicate), thereby making the ALJ's decision the final decision of the Commissioner.

Plaintiff appealed the final decision to this Court on June 27, 2016. Tr. at 1008-10; see also Compl. (Doc. No. 1), No. 6:16-cv-1150-Orl-37JRK (M.D. Fla. June 27, 2016).[5] On April 18, 2017, following Defendant's unopposed motion, the Court reversed and remanded the matter for further proceedings, to include: "(1) further evaluat[ion of] the opinion of [Bruce R.] Hoffen[, M.D.]; (2) further evaluat[ion of] Plaintiff's maximum residual

---

[4] The protective filing date of the DIB application is listed elsewhere in the administrative transcript as January 5, 2012, see, e.g., Tr. at 66, 102, 281, and the protective filing date of the SSI application is listed in some places as January 1, 2012, see, e.g., Tr. at 83, 118.

[5] Hereinafter, citations to documents from this case will be solely to the administrative transcript, which includes the relevant documents.

functional capacity [('RFC')]; and (3) if warranted, obtain[ing] supplemental evidence from a [VE] to clarify the effects of the assessed limitations on the occupational base." Tr. at 1028-29 (Order), 1030 (Judgment).

In the meantime, Plaintiff on June 10, 2016 filed another claim for SSI alleging a disability onset date of January 1, 2013. See Tr. at 976, 1012-25, 1026, 1027, 1074-76, 1131-36. On remand, the Appeals Council issued an Order remanding the case to the ALJ for another hearing and further consideration, and to consolidate the later-filed application with the existing ones. Tr. at 975-76, 1038-39 (duplicate).

The ALJ held a hearing on November 20, 2018, at which she heard from Plaintiff, who was represented by counsel, and a VE. Tr. at 935-60. The ALJ issued a decision ("Decision") on December 12, 2018, finding Plaintiff not disabled through the date of the Decision. Tr. at 902-23. On April 3, 2019, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises three issues: whether the ALJ applied "the correct legal standards" in evaluating Dr. Hoffen's opinion; whether the ALJ "applied the correct legal standards" in considering the opinions of Jill Rowan, Ph.D. and Pamela D. Green, Ph.D.; and whether the ALJ adequately considered the effect of Plaintiff's "obesity on her ability to work as required by Social Security Ruling ('SSR') 02-1p." Plaintiff's Brief (Doc. No. 20; "Pl.'s Br."), filed August 2, 2019, at 2; see id. at 15-20 (argument regarding issue one), 20-22 (argument regarding issue two), 22-23 (argument regarding issue three). On September 19, 2019, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") addressing the issues. After a thorough review of

the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 905-22.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 9, 2010, the alleged onset date."  Tr. at 905 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: Disorders of the spine; seizure disorder; cardiac disorders; history of cardiovascular accident; asthma; obesity; affective disorder; and anxiety related disorder."  Tr. at 905 (emphasis and citation omitted).   At step three, the ALJ ascertained that Plaintiff "does not have an

---

[6] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 905 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b), except with no more than four (4) hours of standing/walking; no more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, and scaffolds; no concentrated exposure to extreme cold and heat, wetness, humidity and vibration; no exposure to hazards (machinery, heights, etc.); no exposure to industrial pulmonary irritants (dust, fumes, odors, gases, poor ventilation); no more than simple routine and repetitive tasks; no more than occasional interaction with co-workers and the general public; no more than frequent fine and gross manipulation with the left upper extremity.

Tr. at 908 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work," Tr. at 920 (emphasis and citation omitted), as a "Police [d]ispatcher," a "Farm supervisor," a "Store manager," and a "Sales person, [f]urniture," Tr. at 921 (emphasis omitted). At step five, after considering Plaintiff's age ("40 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 921 (emphasis and citation omitted), such as "Mail clerk," "Office helper," and "Hospital products assembler," Tr. at 922. The ALJ concluded that Plaintiff was not "under a disability . . . from January 9, 2010, through the date of th[e D]ecision." Tr. at 922 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

Plaintiff's contentions regarding the medical opinions at issue are addressed together. Then, the obesity argument is addressed.

### A. Medical Opinions at Issue

#### 1. Arguments

Plaintiff challenges the ALJ's handling of the opinions of Dr. Hoffen, an examining physician, and Drs. Rowan and Green, non-examining psychologists. Pl.'s Br. at 15-22. As to Dr. Hoffen, Plaintiff argues "[t]he ALJ's reasons for rejecting Dr. Hoffen's opinion are not based on the correct legal standards or supported by substantial evidence." Id. at 17. As to Drs. Rowan and Green, who had similar opinions of Plaintiff's mental functioning, Plaintiff contends that despite affording "'significant weight'" to their opinions, the ALJ failed to adequately account for part of them: the reported need to be "placed away from others and away from the public's demands." Id. at 21 (quoting Tr. at 911, 79).

Responding, Defendant argues as to Dr. Hoffen that the ALJ's reasons for affording the opinion little weight are supported by substantial evidence. Def.'s Mem. at 6-10. As to Drs. Rowan and Green, Defendant asserts there is no contradiction between their opinions and the RFC. Id. at 10-11.

#### 2. Applicable Law[7]

The Regulations establish a hierarchy among medical opinions[8] that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. §§

---

[7] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on the date the claims were filed, unless otherwise noted.

[8] "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

404.1527, 416.927. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f); see also McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

   **3. Analysis**

      **a. Dr. Hoffen**

Plaintiff presented to Dr. Hoffen on April 30, 2014 for a consultative neurological evaluation at the request of the Administration. Tr. at 823. Following the examination and review of Plaintiff's medical, family, medication, social, and allergy history, Dr. Hoffen wrote:

> [Plaintiff] carries diagnoses of seizure, stroke, atypical chest pain, migraine, depression, panic disorder. Patient exam reveals slurred speech, impaired attention with normal short and long-term memory, fluctuating motor function left arm and left leg and fluctuating gait. Medical reports are limited and

> <u>there is no imaging of the brain report describing evidence for cerebral infarct. For complete assessment of the patient, further medical records regarding the remote stroke, radiologic studies of the brain and other report of seizures [are] necessary.</u> In the interim, the patient should not lift or carry more than 10 pounds. Due to fluctuating weakness in the left arm, there is impairment of fine and gross manipulation of left hand and she cannot lift 5 pounds [with] the left arm. She can walk and stand occasionally. She does not require the usage of a cane. Avoid standing unprotected heights. There are no sitting restrictions. Speech is slurred but is clear and she answers questions appropriately. At times, there is impair[ed] attention and slow response time to questions. Neuropsychological evaluation necessary to further assess cognitive status. No driving given imprecise seizure history and fluctuating dysfunction left arm and left leg.

Tr. at 825 (emphasis added).

Dr. Hoffen also filled out a form entitled, "Medical Source Statement of Ability to do Work-Related Activities (Physical)." Tr. at 817-22 (some capitalization and emphasis omitted). In it, he opined Plaintiff can occasionally lift and carry up to ten pounds but never more than that, Tr. at 817; she can sit eight hours per day, Tr. at 818; she can stand or walk two hours at a time (three hours total for standing; two hours total for walking), Tr. at 818; and she does not need a cane for walking, Tr. at 818. As for activities with her hands, with the right hand, Plaintiff can continuously reach in all directions, handle, finger, feel, push, and pull; with the left hand, Plaintiff can occasionally do all of those activities. Tr. at 819. As for use of the feet, Plaintiff can continuously operate foot controls with the right foot, and occasionally with the left foot. Tr. at 819. Regarding postural activities, Plaintiff can never climb stairs, ramps, ladders, or scaffolds; and she can never balance, stoop, kneel, crouch, or crawl. Tr. at 820. As for environmental limitations, Plaintiff can never tolerate exposure to unprotected heights and moving mechanical parts. Tr. at 821. She can occasionally tolerate exposure to humidity, wetness, dust, odors, fumes,

pulmonary irritants, extreme cold and heat, and vibrations. Tr. at 821. Dr. Hoffen further opined as to whether Plaintiff should be operating a motor vehicle: "not now." Tr. at 821. As far as noise, Plaintiff could tolerate a moderate amount. Tr. at 821. Dr. Hoffen opined Plaintiff is able to do every daily activity about which the form inquired, namely: shopping; travel without a companion; ambulate without an assistive device or wheelchair; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with use of a hand rail; prepare simple meals and feed herself; care for her personal hygiene; and sort, handle, and use paper/files. Tr. at 822.

The ALJ assigned "little weight" to Dr. Hoffen's opinion. Tr. at 914. In doing so, the ALJ found "it is not only internally inconsistent, but clearly indicated the opinion was provisional made in the 'interim' absent objective medical evidence and evidence of diagnostic studies (brain imaging studies for stroke and seizure), which do not support the assessed limitations." Tr. at 914. The ALJ further wrote:

> The significant limitations are also not well supported by [] Dr. Hoffen's examination findings of -5/5 strength in the left arm and left leg and 'fluctuating' motor function in left arm and left leg with fluctuating gait. The CE gave no rationale for precluding all postural activities, and restriction to only occasional use of the left upper extremity far exceeds the -5/5 strength findings. This is especially so in light of the fact that a treating source found [Plaintiff] to feign left upper extremity weakness. Moreover, despite the dire restrictions involving the left hand and left leg, [Dr.] Hoffen contradicted these limitations by opining that [Plaintiff] could perform [the listed daily activities].

Tr. at 914-15 (citations omitted).

The ALJ's reasons for discounting Dr. Hoffen's opinion are supported by substantial evidence. The ALJ correctly found that the opinion contains internal inconsistencies and

- 11 -

the limitations assigned are not well supported by objective examination findings.  See Tr. at 817-25.  The ALJ accurately stated that a treating source had found Plaintiff to be feigning upper extremity weakness.  See Tr. at 599.  The ALJ also correctly determined that Dr. Hoffen's opinion as to Plaintiff's functioning was provisional because of a lack of reviewable objective medical evidence.  See Tr. at 825.  Plaintiff contends the ALJ should have recontacted Dr. Hoffen for clarification of the opinion.  Pl.'s Br. at 18 (citations omitted).   In making this argument, Plaintiff contends that the "medical records could have been provided to Dr. Hoffen to see if they would impact his opinion regarding [Plaintiff's] functional limitations."  Id. at 18-19.  But, Dr. Hoffen's opinion was rendered during the first phase of administrative proceedings, prior to the first appeal to this Court.  Given that Plaintiff knew Dr. Hoffen's opinion was going to be reconsidered by the ALJ pursuant to this Court's directions, if Plaintiff thought it were important for him to be provided with the records and to be recontacted, Plaintiff could have done that or asked the ALJ to do it.  Taking into account the lack of a request to recontact Dr. Hoffen, the reasons given by the ALJ for discounting Dr. Hoffen's opinion, and the ALJ's comprehensive review of the rest of the medical evidence of record, the ALJ did not err with respect to Dr. Hoffen's opinion.

### b.  Drs. Rowan and Green

Dr. Rowan, a non-examining psychologist, reviewed the file on June 27, 2012 and concluded—as relevant to Plaintiff's argument—that Plaintiff would "do better if not working with others and likewise will experience less anxiety if not confronted with demands of the general public," and Plaintiff has sufficient "attention, comprehension, concentration, and memory . . . to complete simple and routine tasks at site as long as [Plaintiff] is placed away from others and away from the public's demands."  Tr. at 79

(capitalization omitted). On August 14, 2012, Dr. Green, also a non-examining psychologist, reviewed the file and essentially affirmed Dr. Rowan's opinion in this regard. Tr. at 109. The ALJ assigned "[s]ignificant weight" to these opinions. Tr. at 911.

Plaintiff argues that despite assigning significant weight to the opinions, the ALJ failed to adequately account for the portion about being placed away from others and the public's demands. Pl.'s Br. at 21-22. The Court finds no reversible error with respect to these opinions. First, the ALJ only accorded "[s]ignificant weight" to them, Tr. at 911, meaning that they were not necessarily adopted verbatim. Second, in the RFC, the ALJ limited Plaintiff to "no more than simple routine and repetitive tasks" with "no more than occasional interaction with co-workers and the general public." Tr. at 908. These restrictions, although not completely avoiding others and the public, adequately accounted for the opinions on the whole, especially given the qualification that Plaintiff would "do better" if not working with others. Accordingly, the undersigned declines to disturb the ALJ's findings in this regard.

## B. Obesity

Plaintiff contends the ALJ failed to adequately consider her obesity as required by SSR 02-1p. Pl.'s Br. at 22. Responding, Defendant asserts that the ALJ acknowledged Plaintiff's obesity and the treatment records documenting it, so the ALJ's Decision is supported by substantial evidence. Def.'s Mem. at 12-13. Further, Defendant contends Plaintiff has failed to cite evidence from the relevant period that would show her obesity imposed additional limitations on her ability to work. Id. at 13.

In 1999, the SSA deleted obesity from the listing of impairments. See SSR 02-1p, 2002 WL 34686281, at *1; see also 20 C.F.R. Part 404, Subpart P, Appendix 1.

Nevertheless, obesity must still be taken into consideration when making the disability determination. See SSR 02-1p at *4-5. Social Security Ruling 02-1p provides guidance on how obesity should be analyzed, see id. at *1, and explains that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing," id. at *5.[9] A claimant's combination of impairments is medically equal to a listing "if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." Id. Indeed, in some circumstances, obesity by itself may be equivalent to a listed impairment. Id. Because "[o]besity can cause limitation of function," the ALJ should "consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments . . . ." Id. at *6-7.

The ALJ, however, is not required to "make assumptions about the severity or functional effects of obesity combined with other impairments." Id. at *6. "[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) (quotation omitted); see also Kelly v. Comm'r Soc. Sec., No. 6:08-cv-1751-Orl-19DAB, 2010 WL 582771, *15 (M.D. Fla. Feb. 18, 2010) (unpublished) (citations omitted) (recognizing a finding of not disabled has been affirmed "where the record contains no evidence showing that the claimant's obesity affected her ability to perform work-related

---

[9] "This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." SSR 02-1p at *5.

- 14 -

activities").

Here, the ALJ found obesity to be a severe impairment at step two. Tr. at 905. While the ALJ did not specifically cite SSR 02-1p, the ALJ's Decision makes clear that she sufficiently considered Plaintiff's obesity. When discussing Plaintiff's testimony from April 2, 2014 and November 20, 2018, the ALJ specifically noted Plaintiff's weight. Tr. at 908, 909. The ALJ also noted Plaintiff's weight in summarizing the October 2016 consultative examination (and then assigning that consulting opinion "considerable weight"). Tr. at 917-18. Plaintiff contends, without citation, that she "suffers from cardiac disorders which would be affected by her obesity." Pl.'s Br. at 23. While Plaintiff's conditions may very well be affected by obesity, without Plaintiff pointing to substantial evidence showing that the obesity affects Plaintiff's RFC more than the ALJ found in the Decision, the undersigned will not disturb the ALJ's findings.

### V. Conclusion

The ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 1, 2020.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record